IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BUCHANAN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 23 C 5247 |
| COMMONWEALTH EDISON, an Exelon Company, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Christopher Buchanan has filed suit against his employer Commonwealth Edison (ComEd). He alleges that ComEd denied him a promotion based on his race and color. ComEd has moved for summary judgment.

### Background[1]

Buchanan, who is African American, has been employed in defendant ComEd's Smart Meter Operations (SMO) division since March 22, 2016, starting as a work planner. In April 2021, Buchanan accepted an offer to work as a business analyst in the same division, with the approval of SMO's vice president, Jim Conway. Buchanan did

---

[1] At several points, Buchanan's response to ComEd's Local Rule 56.1(a) Statement of Undisputed Material Facts states that he "lacks sufficient information to either admit or deny" certain facts. *See, e.g.*, Pl.'s Resp. to Def.'s Local Rule 56.1(a) Stmt. of Undisputed Material Facts ¶ 3. The Court exercises its authority to "insist on strict compliance with local rules designed to promote the clarity of summary judgment filings" and deems these facts to be admitted. *See Stevo v. Frasor*, 662 F.3d 880 886–87 (7th Cir. 2011); *Jupiter Aluminum Corp. v. Home Ins.*, 225 F.3d 868, 871 (7th Cir. 2000).

not start working as a business analyst until July 9, however, at the request of his work-planner manager.

On December 14, 2021, Buchanan applied for a promotion to senior supervisor in the SMO division. Since September 2011, ComEd has maintained a policy stating that non-union employees may only "apply" for promotions "if they . . . [h]ave been in their current position for at least one year." Otte Decl. ¶¶ 9–10 & Ex. 5. The policy allows the "current department head/manager" to "waive" the one-year tenure requirement. *Id.*, Ex. 5.

By the end of January 2022, Buchanan had made it through the interview process and was the hiring manager's first choice for the promotion. But Conway informed the hiring manager that Buchanan was not eligible for the position. The hiring manager then intended to offer the position to his second choice, an African American employee named Tyrone Davis, but Davis withdrew his application before the manager could extend the offer. Finally, the hiring manager offered the job to his third-choice candidate, Michael Beall, a white employee. Beall also turned down the job. With no one left, the hiring manager withdrew the job posting.

The manager reposted the position in July 2022. Buchanan was aware of the job posting and was now eligible to apply under the one-year policy, but he decided against it in order to spend more time with his elderly parents. Ultimately, another African American employee, Rosalyn King, was promoted to the position.

Buchanan filed suit against ComEd for employment discrimination in August2023, based on Conway's determination that he was ineligible for the promotion.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

**A.     Employment discrimination**

Buchanan asserts that ComEd, through Conway, engaged in discrimination based on race and color in violation of Title VII of the Civil Rights Act of 1964 and section 1981 of the Civil Rights Act of 1866. *See* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. Under both of these statutes, a plaintiff must establish that a discriminatory motive caused the adverse employment action. *See Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021) (Title VII); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (Section 1981). "At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action." *Chatman*, 5 F.4th at 746.

Plaintiffs have two primary methods of showing employment discrimination. They can present their evidence through the burden-shifting framework established in

3

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Or they can forego the *McDonnell Douglas* framework in favor of a "holistic" review of the evidence. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957–58 (7th Cir. 2021). Buchanan argues the case under both approaches.

**B.     Holistic approach**

The holistic approach requires a court to put all the evidence, direct and indirect, "in a single pile" and evaluate it "as a whole." *Ortiz*, 834 F.3d at 766. The aggregate of the evidence must "permit a reasonable factfinder to conclude that the plaintiff's race . . . or other proscribed factor caused the . . . adverse employment action." *Id.* at 765.

Buchanan concedes there is no direct evidence that race or color motivated ComEd's decision to deny him the promotion. Instead, he relies on a collage of circumstantial evidence that he contends collectively indicates discriminatory intent.

**1.     Buchanan's qualifications**

First, Buchanan argues that ComEd's refusal to promote him despite being the hiring manager's top choice indicates discriminatory enforcement of the one-year policy. It is undisputed that the hiring manager was going to offer Buchanan the promotion before Conway stepped in: Buchanan was deemed the strongest candidate and was found highly qualified for the position. Conway's decision to block Buchanan's promotion led to a less qualified white coworker, Beall, receiving the offer. This, Buchanan argues, indicates ComEd's discriminatory intent.

Yet Beall was not next in line to receive the promotion once Conway deemed

4

Buchanan ineligible. Davis, another African American employee, was the hiring manager's second choice, and it is undisputed that Davis would have gotten the offer if he had not withdrawn his application before the hiring manager could extend it. For Conway's actions to constitute discrimination based on race or color, he would have had to know that Davis, who was also African-American, would then withdraw his application and that Beall, who was white, would then be offered the position. Buchanan offers no evidence to support this, and the inference is far from obvious—the fact that the hiring manager was willing to withdraw the job posting for several months once Beall also declined the offer indicates there was no guarantee he would be offered the position even when Davis withdrew. A chain of inferences this attenuated "cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) ("[A]n inference that veers too far into speculation fails to survive summary judgment.").

**2.      The one-year policy's enforcement**

Second, Buchanan argues ComEd's selective enforcement of the policy indicates discriminatory intent. His argument on this point is threefold. First, in a footnote, he argues that the one-year policy only became effective on April 20, 2022, making ComEd's enforcement of the policy against him in 2021 against Buchanan arbitrary. Yet Buchanan overlooks the undisputed evidence that ComEd has had this one-year policy since at least 2011. His argument that the policy was not in effect when Buchanan applied for the promotion lacks merit.

Next, Buchanan argues that ComEd's enforcement was discriminatory, as the policy, read literally, only prevented Buchanan from *applying* for the promotion.

5

Buchanan emphasizes that because the one-year policy specifies that an employee cannot "apply" for a promotion until spending one year in his current position, it only limits an employee's ability to initiate an application. By interpreting the policy to Buchanan's detriment after he made it through the interview process, he argues, ComEd arbitrarily applied the policy to him in a discriminatory manner.

But even if ComEd incorrectly interpreted the one-year policy, misinterpretation alone does not indicate discriminatory intent. An employer who "honestly believed it made the correct employment decision" does not discriminate "even if its decision was inaccurate, unfair, . . . foolish, trivial, or baseless." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023) (citation omitted). Conway understood the policy made employees "generally not . . . eligible for promotion unless and until they had been employed in their role for at least a full year." Conway Decl., Ex. F, ¶ 9. Buchanan provides no evidence suggesting this interpretation was discriminatory as opposed to merely inaccurate. He does not cite any examples where ComEd adopted his proposed interpretation for other employees, nor does he bolster his interpretation with evidence beyond his literal, somewhat semantic reading. *See Jones v. Union Pac. R.R.*, 302 F.2d 735, 743 (7th Cir. 2002) (finding an employer's alleged misinterpretation of a policy to not be evidence of discrimination when the plaintiff "provided no evidence to contradict [the employer's] interpretation" and gave no "examples demonstrating the policy had never before been interpreted in that manner"). Without more, an inference of discriminatory intent from Conway's alleged misinterpretation would not be reasonable.

Finally, Buchanan argues that ComEd's past implementation of the policy

indicates discriminatory intent. Buchanan asserts that there is a "documented history of making exceptions to this policy, particularly for white employees." Pl.'s Resp. in Opp'n to Def's Mem. of Law in Supp. of its Mot. for Summ. J., at 8. He cites two examples of white employees who were given a promotion despite not meeting the one-year tenure requirement: Brian Tepper and Bradley Preston. But although Buchanan frames Tepper and Preston as similarly situated to him, each of their circumstances illustrates a unique case both in qualifications and hiring circumstances.

    Tepper, who was promoted to senior supervisor, had prior supervisory experience and was a licensed electrician, both of which made him uniquely suited for the promotion. Buchanan attempts to close the qualifications gap between him and Tepper by noting that he has a master's degree, but he does not explain how that would be relevant to the promotion Buchanan sought. *See Rucker v. Dep't of Child & Fam. Servs.*, 326 F. App'x 397, 399 (7th Cir. 2009) (finding a plaintiff's "master's degree" was not evidence of superior qualifications when it was "difficult to see how [the] degree would necessarily make him more qualified for his current position"). Moreover, it is undisputed that Tepper was offered his promotion when a recent retirement left a division short-handed and in urgent need of support. Although Buchanan argues that the job posting for service supervisor inherently demonstrates an urgent need there too, the fact that the hiring manager withdrew this job posting for months after no original candidates accepted the offer undercuts any inference of urgency, and Buchanan offers no other evidence indicating an urgent need.

    Preston's circumstances were even more distinct. He had more supervisory experience than Buchanan and Tepper, and he got given the promotion only after being

unexpectedly released early from another ComEd division. Buchanan, conceding that Preston "may have had more experience," attempts to reframe the issue as being solely focused on Preston "not meet[ing] the one-year tenure requirement." Pl.'s Resp. in Opp'n to Def's Mem. of Law in Supp. of its Mot. for Summ. J., at 12. Yet examples that differ too much from the case at hand do not give rise to an inference of discrimination. *Cf. Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 723 (7th Cir. 2018) (citation omitted) (noting that "eliminat[ing] other possible explanatory variables" such as "differing roles" and "performance histories . . . help[] isolate the critical independent variable—discriminatory animus").

Buchanan's examples thus fall far from suggesting a "documented history" of policy exceptions favoring white employees. They are too dissimilar to Buchanan's circumstances to give rise to a genuine factual dispute regarding ComEd's enforcement of the one-year policy.

### 3. ComEd's waiver of the policy

Third, Buchanan argues that ComEd waived the one-year policy by interviewing him. He argues ComEd effectively treated him as eligible by allowing him to go through the interview process. The sudden deviation in treatment at the very end of the hiring process, Buchanan contends, suggests a discriminatory intent.

Similar to his argument concerning the policy's language, however, Buchanan does not connect the alleged waiver to discrimination. It is true that "unusual deviation from standard procedures can serve as circumstantial evidence of discrimination." *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017). But Buchanan must do more than assert ComEd's enforcement of the policy was "inaccurate" or "unfair" based

8

on the waiver. *See Carnahan*, 88 F.4th at 716. He must provide some evidence that would permit a reasonable jury to find that the application of the policy was purposeful discrimination rather than an honest mistake. *See Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024) (citation omitted) (distinguishing a "lie" that indicates discrimination from an "oddity" or "error"); *see also Baraona v. Village of Niles*, 720 F. Supp. 3d 601, 616 (N.D. Ill. 2024) (discrediting cited "discrepancies" and "deviations" as "irrelevant" when they had "nothing to do with race"); *Saud v. DePaul Univ.*, No. 19 CV 3945, 2024 WL 5007833, at *13 (N.D. Ill. Dec. 6, 2024) (same). Buchanan has provided no evidence that would allow a reasonable inference of discrimination from this alleged waiver, such as other less than one-year-tenured employees being considered eligible for promotion by dint of completing the interview process. An alleged waiver of the policy alone does not give rise to a genuine factual dispute regarding discrimination.

### 4. The decision-making process

Finally, Buchanan argues that the decision-making process surrounding the policy supports an inference of discrimination. Buchanan contends that absent "transparent, objective criteria" for the policy's exceptions, the selective enforcement of the policy "overwhelmingly benefited white employees." Pl.'s Resp. in Opp'n to Def's Mem. of Law in Supp. of its Mot. for Summ. J., at 10. But aside from the two examples discussed above—neither of which are actually comparable, as discussed—Buchanan has not provided evidence of benefit to white employees from exceptions. Without such evidence, no reasonable inference of discrimination can be drawn from the fact that the policy's exceptions criteria lack transparency.

9

### 5. The totality of the evidence

Although the Court has reviewed each item of evidence individually, its analysis does not end there. Now the Court considers all the evidence as a whole, asking "whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki*, 988 F.3d at 958. Yet even considering all the alleged errors in ComEd's decision, the totality of the evidence does not raise a genuine dispute of material fact regarding ComEd's discrimination.

Buchanan's argument can be summed up as this: Buchanan was the most qualified candidate for the promotion; ComEd erroneously applied its one-year policy to make him ineligible for the promotion; in two other situations the company waived the policy for a white applicant; and therefore it can be inferred that ComEd discriminated against Buchanan based on his race or color. But absent evidence that ComEd's errors were actually more than honest mistakes, the evidence does not give rise to a reasonable inference of discrimination. It is also telling that ComEd's decision concerning Buchanan immediately resulted in another African American employee being slotted for the promotion opportunity, and eventually resulted in yet another African American employee actually getting the promotion. In sum, Buchanan has provided no evidence indicating a link between ComEd's application of its one-year policy and discrimination, and no reasonable jury could find the company discriminated based on Buchanan's race or color.

### C. *McDonnell Douglas* burden-shifting framework

To establish a *prima facie* case of discrimination under *McDonnell Douglas*, a plaintiff has the initial burden of showing that he (1) belongs to a "protected class";

(2) met his "employer's legitimate expectations"; (3) "suffered an adverse employment action"; and (4) another "similarly situated employee" outside of the protected class "received better treatment from [their] employer." *Igasaki*, 988 F.3d at 957. If a plaintiff satisfies that burden, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action. *David*, 846 F.3d at 225. Once an employer offers a nondiscriminatory reason, "the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

The Court solely analyzes whether a reasonable jury could find that ComEd's explanation for denying Buchanan the promotion was pretextual, as it is dispositive in this case. A legitimate, nondiscriminatory rationale for an adverse employment decision is pretextual if the decision-maker "did not sincerely believe the rationale when making his final decision." *Cunningham v. Austin*, 125 F.4th 793,789 (7th Cir.2025). The plaintiff must offer evidence that the rationale is "a lie" or "phony," not just an "oddity" or "error." *Id.* (citation omitted); *Vassileva*, 118 F.4th at 874 (citation omitted). This means a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the asserted reason that allow "a reasonable person [to] find it unworthy of credence." *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (citation omitted). If the employer "honestly believed it made the correct employment decision," a plaintiff's discrimination claim cannot succeed "even if its decision was inaccurate, unfair, . . . foolish, trivial, or baseless." *Carnahan*, 88 F.4th at 716.

ComEd's one-year policy, if applied neutrally, is a legitimate, nondiscriminatory reason for denying Buchanan the promotion he sought. *See., e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 (2003) (finding a "neutral no-rehire policy . . . plainly

11

satisfied" the defendant's "obligation under *McDonnell Douglas* to provide a legitimate, nondiscriminatory reason for refusing to rehire" the plaintiff). Buchanan, having the burden to show pretext, offers several arguments for why the policy is a made-up reason for denying him the promotion.

Many of the arguments Buchanan makes for pretext are identical to those the Court assessed under the holistic approach, including that the policy was misinterpreted and inconsistently applied in favor of white employees. The analysis here is the same as discussed above, as well as the conclusion: without evidence indicating ComEd's application of the policy was dishonest, not just incorrect, discrimination (or pretext) cannot reasonably be inferred. *See Carnahan*, 88 F.4th at 716.

Buchanan's separate arguments focused on pretext fare no better. First, Buchanan asserts that ComEd misrepresented his employment history by characterizing his move from work planner to business analyst as a promotion. He argues that this change in employment title should have been considered a lateral move, not a promotion, as both work planner and business analyst are considered the same level of position by ComEd. This misrepresentation, he contends, indicates discriminatory intent.

Yet, similar to his argument concerning ComEd's interpretation of its policy, Buchanan points to no evidence that would permit a finding that ComEd's supposed misinterpretation of his employment history was discriminatory as opposed to merely inaccurate. ComEd's stated understanding of the policy, as seen through Conway's statement, is that employees were "generally not . . . eligible for promotion unless and until they had been employed in their role for at least a full year." Conway Decl., Ex. F,

12

¶ 9. Whether or not ComEd should have characterized Buchanan's change in employment as a lateral move as opposed to a promotion, it is undisputed that Buchanan was in the same "role" as business analyst for less than one year. It may be inaccurate to say Buchanan was previously promoted, but that characterization in no way suggests that ComEd's stated policy reason for not promoting him was not an honest rationale.

Second, Buchanan argues ComEd manipulated its one-year tenure requirement by delaying his transition from work planner to business analyst. He contends that "had he been released from his previous role" when he applied for the business analyst position in April 2021, "he would have met the one-year requirement." Pl.'s Resp. in Opp'n to Def's Mem. of Law in Supp. of its Mot. for Summ. J., at 14.

This is inaccurate. Even if Buchanan had started working as a business analyst when he applied in April 2021, he still would have been ineligible under the one-year policy by four months when he applied for the promotion (December 2021) and by three months when the interviews concluded (January 2022). It is unreasonable to infer pretext from a delay that in no way impacted Buchanan's eligibility for the promotion under the policy.

In sum, Buchanan has provided no evidence from which a reasonable jury could infer that ComEd's legitimate, nondiscriminatory reason of the one-year policy was pretextual. And, as stated above, no reasonable jury could find ComEd discriminated against Buchanan in denying him the promotion based on a holistic review of the evidence either. For these reasons, ComEd is entitled to summary judgment on Buchanan's claims.

13

## Conclusion

For the reasons stated above, the Court grants ComEd's motion for summary judgment [dkt. no. 31] and directs the Clerk to enter judgment stating: Judgment is entered in favor of defendant Commonwealth Edison and against plaintiff Christopher Buchanan.

Date: March 31, 2025

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge